EDWIN C. ROBERTSON v. WILLIAM RENTZ and Others.[1]

February 9, 1898.

Nos. 10,933—(275).

**Estoppel — Equitable Lien on After-Acquired Title — Validity as against Assignee in Insolvency—Record—Constructive Notice—Trust.**

L. intrusted his agent, K., with $1,000, to be loaned on first mortgage security. K. used the money for his own benefit, and procured R. to execute a note to L. for the money, and a mortgage, which was duly recorded, on the land in question, to secure it. K. sent the note and mortgage to L., and then represented to him that the mortgage was a first lien on the land, and the title thereto perfect in R. L. relied on the representations, and, induced thereby, accepted the mortgage as security for his money. R. received no part of the money, and, as K. knew, never at any time owned the land, or had any interest therein. K. subsequently acquired title thereto, which stood of record in his name for two years, when he made an assignment in insolvency for the benefit of his creditors, none of whom had any notice of any claim by L. of any lien or interest in the land. The deed of assignment was duly recorded. *Held*:

(1) That L., as against K., on the ground of estoppel, had an equitable lien or mortgage on the land to the amount of R.'s mortgage.

(2) That the record of R.'s mortgage was not constructive notice to the creditors of K. of such equitable lien or mortgage.

(3) That L. cannot enforce such lien against the assignees in insolvency of K. so far as they represent creditors.

Appeal by plaintiff, as administrator of the estate of Charles J. Lawton, deceased, from a judgment entered in the district court for Hennepin county in favor of the defendants, Charles M. Hanson and Albert C. Cobb, as assignees in insolvency of Austin F. Kelley, pursuant to the findings and order of Jamison, J. Affirmed.

*Edward C. Gale,* for appellant.

*Cobb & Wheelwright,* for respondents.

START, C. J.

On and prior to August 19, 1892, and until the making of an

[1] Reported in 74 N. W. 133.

assignment in insolvency, as hereinafter stated, the defendants Austin F. Kelley and Louis E. Kelley, as partners, under the firm name of A. F. & L. E. Kelley, were engaged in the city of Minneapolis in the business of placing and dealing in real-estate mortgage loans, and had made various loans on such security for the plaintiff's intestate, Charles J. Lawton, a resident of the state of Vermont.

.Prior to the day named, the firm had in its hands, for the purpose of so loaning, the sum of $1,000, received from and belonging to Lawton, under instructions that it should be placed in first mortgage loans, with the title perfect in the mortgagor. The firm deposited this money, so to be loaned, to their own credit, in bank, mingled with their own and other funds, and paid it out in the usual course of business for their own benefit, and it cannot be traced. No specific instructions were ever given by Lawton to A. F. & L. E. Kelley to loan the $1,000 upon the specific land described in the complaint in this action, but they caused the defendants William Rentz and his wife, Louisa J., to make their promissory note to Lawton for $1,000, dated August 19, 1892, due in three years, with interest payable annually at the rate of seven per cent. per annum, and to execute a mortgage to him on the premises described in the complaint to secure such note. The mortgagors never received any part of the $1,000.

The mortgage was duly recorded in the office of the register of deeds of the proper county on August 27, 1892, and thereafter the Kelleys sent it with the note to Lawton, and then represented to him that the mortgage was a first mortgage on the land therein described, which was owned by Rentz, and that the title was perfect in him. Lawton believed the representations, relied thereon, and, induced thereby, accepted the note and mortgage as an investment for the $1,000, and had no notice that Rentz was not the owner of the land, or that neither of the Kelleys had any interest therein until shortly before the commencement of this action. In fact neither Rentz nor his wife, as the Kelleys knew, ever owned the land, or ever had any interest therein.

Austin F. Kelley, however, acquired the title to the premises on September 8, 1894, and not before, and the legal title thereto,

from this date until he made his deed of assignment in insolvency, stood in his name of record in the office of the register of deeds of the county in which the premises are situated. None of the creditors of Austin F. Kelley ever had any notice or knowledge in fact of the mortgage in question, or of any claim by Lawton, or any lien on or interest in the premises therein described. The firm of A. F. & L. E. Kelley, after the making of the mortgage, and up to the time of their assignment, continued to act for Lawton as his agents in the general care of the mortgage, and themselves paid the interest thereon, until default was made, January 1, 1896. No part of the principal of the mortgage has ever been paid.

On September 12, 1896, the firm of A. F. & L. E. Kelley, and Austin F. Kelley and Louis E. Kelley as individuals, duly executed a deed of assignment of all of their unexempt property for the benefit of their creditors under the insolvency laws of the state to the defendants Charles M. Hanson and Albert C. Cobb, who accepted the trust, and duly qualified. Such deed was duly filed and a certified copy thereof duly recorded in the office of the register of deeds of the proper county on September 17, 1896. Austin F. Kelley and Louis E. Kelley, as a firm and as individuals, for more than one year before their assignment, continuously were, and now are, indebted to divers persons in an amount exceeding $700,000, and a large number of the creditors of Austin F. have proved their claims in the insolvency proceedings.

After the making and recording of the deed of assignment, and in February, 1897, Lawton commenced this action to have it adjudged that the legal title to the premises is held in trust by Austin F. Kelley and his assignees for and to his use, and that the mortgage so made by Rentz be adjudged a first lien thereon, and be foreclosed. The assignees claimed that they were the owners in fee of the premises for the purposes of the trust created by the assignment, and that the plaintiff had no interest in or lien upon the premises as against them. Lawton died pending the action, and his administrator, Edwin C. Robertson, was substituted as plaintiff. The trial court, pursuant to the stipulation of the parties, found substantially the foregoing facts, and directed judgment in

favor of the assignees, and the administrator appealed from the judgment.

1. The appellant claims that equity will fasten an implied trust, —a trust ex maleficio,—upon this land in favor of the plaintiffs as against Kelley himself, arising out of his fiduciary relations; and that the assignees are in no better position to defend against the enforcement of the trust than Kelley is, because our statute (G. S. 1894, § 4283) providing that

"No implied or resulting trust shall be alleged or established, to defeat or prejudice the title of a purchaser for a valuable consideration, and without notice of such trust,"

Does not protect the assignees who are not purchasers for value, and have only the rights of attaching and judgment creditors, who are not protected by the statute.

The character of Lawton's remedy against Kelley, if no assignment had been made, is obvious. It would have been, not an action to have it adjudged that Kelley held the legal title in trust for him, but to have his mortgage adjudged an equitable lien upon the land. As against Kelley, such an action would lie upon the ground that, having knowingly and fraudulently represented to Lawton that the Rentz mortgage was a first lien on the land, and thereby obtained from him $1,000, Kelley is estopped from denying the truth of his representations. When Kelley acquired the legal title to the land, Lawton acquired, as against him, an equitable lien thereon to the amount of the Rentz mortgage, which he had so represented to be a lien thereon. The extent of Lawton's remedy against the land is to have the representation made good.

There is no resulting trust, for none of the funds of Lawton were used in the purchase of the land. There could be no constructive trust raised so as to charge Kelley as trustee of the legal title for Lawton, for the former violated no duty which he owed to the latter by purchasing the land, but, on the contrary, his acquisition of the legal title directly benefited Lawton, for it gave to him what he did not have before, an equitable lien by estoppel on the land for the amount of his mortgage. Thereafter Kelley held the legal title subject to such lien, and not as trustee for Lawton.

It therefore follows that it is unnecessary to pass upon the further claim that attaching and judgment creditors are not protected against the assertion of resulting and constructive trusts in land, the legal title whereof is in their debtor.

2. None of the creditors of Kelley ever had any actual notice of the equity of Lawton in the premises, and, unless the record of the Rentz mortgage to him was constructive notice to them of such equity, it follows that the assignees in this case took the land in question, by virtue of the deed of assignment and the registry act, freed from the lien of Lawton's equitable mortgage thereon, for, being unrecorded, it was void as to them, in so far as they represent creditors. Kellogg v. Kelley, 69 Minn. 124, 71 N. W. 924.

But the appellant claims that the record of the Rentz mortgage was constructive notice of such equitable mortgage. It is to be noted that the mortgagor, Rentz, not only was a stranger to the title when he made the mortgage, but has never since acquired any title to or interest in the land; and, further, that his mortgage, in and of itself, was never a lien, legal or equitable, upon the land. Lawton's lien or equitable mortgage on the land in question rests solely upon the fact that Kelley represented the Rentz mortgage to be a lien on the land to which he afterwards acquired the title, and is estopped from asserting that his representation is not true. Rentz not only was a stranger to Kelley's title, but was never connected with the title to the land in any manner whatever. Neither Kelley nor the assignees derive any right or title through Rentz, or through any title, of record or otherwise, he was ever at any time connected with. The record of his mortgage was not notice, constructive or otherwise, to the creditors of Kelley of anything. Schoch v. Birdsall, 48 Minn. 441, 51 N. W. 382; 1 Jones, Mortg. §§ 469, 576.

Taking the most favorable view of the case for Lawton, he had, at the time the deed of assignment was made, an unrecorded equitable mortgage on the land in question. Such being the case, he is certainly no better off than he would have been if, instead thereof, he had had a strictly formal and legal unrecorded mortgage;

and this case falls within the rule laid down in Kellogg v. Kelley, supra.

Judgment affirmed.